THOMAS T. WHEELER'S ESTATE.     }    September Term, 1847.

[CHANCERY PRACTICE—CONTRIBUTION AMONG JOINT OBLIGORS—ASSIGNMENT OF JUDGMENT.]

WHERE a case is set down for hearing on bill and answer, all the averments of the latter, whether responsive or not to the allegations of the bill, are taken to be true.

Three joint obligors in a single bill, though jointly and severally liable to the creditor for the whole debt, are, as among themselves, each bound to contribute one-third; because each must be supposed to have received that proportion of the consideration, upon which the obligation was given.

One of such obligors who has received from another a sum of money or other property, equal in value to the proportion of that other in the common burden, and released him from all liability on account thereof, must be supposed to have received a consideration equal to two-thirds of the debt, and must be charged with that proportion, in adjusting the equities between himself, and the remaining obligor.

The third obligor, who has been compelled by the creditor to pay a sum exceeding his one-third, will be allowed at once in equity, and without circuits, to go against the party thus supposed to have received two-thirds of the consideration of the debt for such excess.

The obligor who has paid the judgment of the creditor, and taken an assignment thereof to himself, may use such judgment for his indemnity, so far as it clearly and certainly appears, that his co-debtor ought to contribute.

[Thomas T. Wheeler, on the 19th March, 1844, executed to Richard J. Bowie, a conveyance of all his property, real, per-

sonal and mixed, in trust to sell for the benefit of his creditors. On the 1st February, 1847, the trustee, who had partly executed the trust, filed his bill in this court, making John H. Hilleary, and others of the creditors, parties, for a sale of the property, and for the direction of the court as to the management of the trust. John H. Hilleary in his answer, set out his claims against Wheeler, amongst which was that hereafter referred to as No. 2. The cause was set down for hearing upon bill and answer, and a decree passed by consent, in conformity with the prayer of the bill, and directing an account by the trustee of the sales made by him previous to the filing of the bill, "all equities being reserved as to the creditors of the said Wheeler, entitled under the said deed of trust, for or on account of the proceedings of the trustee, previous thereto, nothing being herein intended to affirm the propriety thereof," and with a similar reservation of the equities of said creditors as to the sales to be made under the decree. The trustee thereupon proceeded to make farther sales, reported those made before the decree and brought considerable sums into court.

The case came up on exceptions to the Auditor's report as to claim No. 2, in the statement of claims.

This claim was founded upon the joint and several single bill of the said grantor, Thomas T. Wheeler, of Odel Wheeler and Thomas Hilleary, all of whom were admitted to be principals, for $1800, dated 17th March, 1825, and payable twelve months after date, with interest from date, upon which judgment was recovered at March term, 1829, of Montgomery County Court against Thomas T. Wheeler and Thomas Hilleary, in the name of Thomas S. Wilson, the obligee, for the use of Jonathan T. Wilson; which was revived at November term, 1843, against said Wheeler alone, in the name of the executors of the obligee, for the use of the said Jonathan T. Wilson, $570 being credited thereon, as of the 7th May, 1829, and against John H. Hilleary, as administrator of Thomas, and was afterwards paid by John H. Hilleary, as appears by his answer, on which it was assigned to him. No proceedings were instituted against Odel Wheeler, the other co-obligor, and an agree-

ment had been made by Thomas T. Wheeler with his representatives, dated 3d November, 1842, by which, for a valuable consideration, he released them from all liability on account thereof, and agreed to indemnify them for any loss by reason of the same, "provided always that the said Thomas T. Wheeler shall have full power and authority to defend any suit at law or in equity, which may be instituted against the representatives or heirs of the said Odel, or either of them, on account of the said single bill."

Upon this agreement the Auditor gave Hilleary the benefit of the lien of the judgment, charging him with only one-third, and the proceeds of Wheeler's property with two-thirds.

By his statement, there appeared to be due on the judgment after crediting all payments up to the time of the payment in full by Hilleary, the sum of $2329 52, to which was added so much as he had paid over and above his one-third, with interest thereon to the day of sale, making the sum of $2880 27, less than the whole amount of the judgment, principal and interest, without the credits on account of the payments made by Wheeler and Thomas Hilleary, deceased.   It was intended by the complainant, that by this statement, Hilleary would receive, even on the hypothesis that Wheeler's estate was responsible for two-thirds, the sum of $428 14 more than he was entitled to.   The original debt being $1800, with interest from the 17th March, 1825, Thomas Hilleary paid $570, on the 7th of May, 1829, the costs being then $17 97.   On the 28th November, 1837, additional costs amounting to $5 31, having been incurred, John H. Hilleary, the claimant, paid $600, and on the 2d April, 1836, Wheeler paid $300.   Additional costs, amounting to $12 08, were afterwards incurred, and Wheeler paid 12th December, 1845, $250.

The complainant excepted to the Auditor's report.

1st. Because compound interest was in effect allowed, and the estate of Wheeler was at the farthest only bound for two-thirds of the original debt and interest.

2d. Because the judgment was improperly allowed as a lien.

3d. Because Wheeler was only bound for one-third.

4th. Because there was no evidence in the cause, of the time or amount of payment made by Hilleary, on which he procured the assignment.

It was contended by Hilleary's solicitor, that as his claim was set up in his answer, and the decree was passed on bill and answer, no further proof could be required of him; and on the other side it was asserted, that the reservation in the decree prevented that effect.]

The Chancellor :

I do not look upon it, the reservation, as at all affecting the rule, that when a case is set down for hearing on bill and answer, all the averments of the latter, whether responsive or not to the allegations of the bill, are to be taken for true.  All the creditors of Wheeler not being parties to the bill, it seemed proper that there should be a reservation of their equities, not only with respect to the proceedings of the trustee, before he invoked the aid of this court, in the execution of his trust, but that the reservation should extend to what might be done subsequently thereto.

This is my understanding of the scope of the reservation, and I think it would be carrying it beyond its legitimate extent, to construe it, so as to require proof of facts which according to the rules of pleading, and the practice of this court, would, but for the reservation, be considered admitted.

It is apparent upon the face of the instrument itself, (the single bill,) "and it is admitted in writing, that the three parties were all principals in the single bill, and therefore it is to be intended, that they each receive one-third of the consideration upon which it was executed.  And it likewise appears by the agreement between the representatives of Odel Wheeler and Thomas T. Wheeler, that the latter, for a valuable consideration paid him by the former, released and discharged them from all obligation to contribute to the payment of the debt, to the obligee, Wilson, and contracted to indemnify and save them harmless on account of the same.   It is true, Thomas T. Wheeler stipulates in the said agreement, that he shall have power

and authority to defend any suit at law or in equity, which may be instituted against the heirs or representatives of Odel Wheeler on account of said single bill, but this stipulation is not inconsistent with, but is entirely compatible with the complete substitution of himself as the party liable, in the place of his co-obligor, Odel.

As I understand this agreement, Thomas T. Wheeler by it assumed upon himself, for a valuable consideration, moving from the representatives of Odel to him, the payment of Odel's one-third of the single bill in question, which made him responsible for two-thirds. The stipulation, that he shall have power to defend the proceedings at law or in equity which may be instituted against the representatives of Odel Wheeler, does not appear to me to militate against this view of the obligation imposed upon him by contract. Having by his agreement with the representatives of Odel, undertaken to pay his, Odel's, part of the single bill, nothing was more natural or proper than that he should be authorized to defend any action which might be brought against those representatives on account thereof; and being so authorized, it is quite likely a failure on their part to give him notice of such action, might be fatal to their right to recover from him upon the contract, in the event of their being compelled to pay any thing on the single bill.

But as the case presents itself to my mind, the question here is not, whether the representatives of Odel Wheeler could recover from Thomas T. Wheeler, if they were made to pay any part of the joint debt, without having given him an opportunity to defend the action; but whether as between Thomas T. Wheeler and Thomas Hilleary, the former by receiving from Odel Wheeler a full and valuable consideration for that portion of the debt, which he, Odel, was bound to pay, Thomas T. Wheeler is not, with respect to Hilleary, substituted for Odel, and responsible for his one-third of the joint debt due upon the single bill. There can be no doubt, that originally each of these three joint obligors, though jointly and severally liable to Wilson, the creditor, for the whole debt, were, as among themselves, each bound to contribute one-third, because each must

be supposed to have received that portion of the consideration upon which the obligation was given.

But if either one of them receives from the other a consideration equal to the proportion of that other, of the common burden, he must take that proportion upon himself, and in the adjustment of the equities between the remaining party and the obligor, who has enjoyed a consideration equal to two-thirds of the debt, the latter must be charged with that proportion.

That appears to me precisely the relative position of these parties, Thomas T. Wheeler, Odel Wheeler and Thomas Hilleary, each received from Wilson a consideration in money or property, equal to six hundred dollars, and executed to him their joint and several single bill for eighteen hundred dollars.

As between themselves, therefore, each was liable to pay six hundred dollars. But one of them, Thomas T. Wheeler, received from another, Odel Wheeler, in money or property, or in something else of value, a sum equal to the six hundred dollars. Surely, therefore, he, Thomas T., should pay twelve hundred dollars, and Hilleary, the third co-obligor, who has been compelled by the creditor to pay a sum exceeding his one-third of the debt, should be allowed at once in equity, and without circuity, to go against him, Thomas T., for such excess.

This view of the subject relieves the case, as it seems to me, of the question raised upon the argument, as to the obligation to give Thomas T. Wheeler notice, and an opportunity to defend a suit brought against Odel Wheeler. He has agreed to assume the payment of Odel's part of the debt, and may as well here, as anywhere else, show, if he can, that Odel is liable for less than a third, or not liable for any portion.

No attempt has been made to do this, and upon the face of the instrument and by the terms of the agreement of the parties; the obligors in the single bill were all principals.

I am, therefore, of opinion, that Thomas T. Wheeler is liable to contribute two-thirds; and I am further of opinion, that the statement of the claim by the Auditor is correct.

The creditor unquestionably was entitled to receive the whole amount of his debt, with interest, and the payments made him

8

from time to time, were properly applied in the first instance to the extinguishment of the interest due upon the whole capital, the excess of such payments only being applicable to the payment of the capital itself. But the mode of stating the claim, contended for by the counsel of Thomas T. Wheeler, would defeat this incontestible right of the creditor; for by splitting it up, and applying the payments to the satisfaction, not of the sum due for interest on the whole debt, but on that portion of it assumed to be due from the party making the payment, it is obvious, the creditor would not receive as much for principal and interest as he was clearly entitled to. It is not asserted, that the creditor has received more than he had a right to demand, and I therefore think it must follow, that Hilleary has a right to recover from his co-debtor, Thomas T. Wheeler, the excess which he Hilleary, has paid, beyond that proportion of the debt for which he was liable.

The remaining question relates to the extent to which Hilleary has a right to use the judgment, for his protection and indemnity. That he has a right to use it to some extent, is settled by authority. *Sells* vs. *Admrs. of Hubbell*, 2 *Johns. Chan. Rep.*, 397 ; *Scribner* vs. *Hickok*, 4 *ib.*, 530.

The only sums credited upon the judgment at the time of its assignment to Hilleary, is the $570, paid by his intestate on the 7th May, 1829. The subsequent payments are not credited, and I can see no reason why the judgment may not be used for the protection of Hilleary, so far, in the language of Chancellor Kent, as it clearly and certainly appears that the other party ought to contribute.

What difference can it make, so far as this question is concerned, whether the party paying more than his proportion of the debt, pays it from time to time in partial amounts or pays all at once? If, to be sure, these partial payments had been credited upon the judgment, it might, *pro tanto*, be regarded as satisfied, and when the final payment came to be made, the party making it must take and use the judgment, only for what remained due upon it. But when the judgment stands open, I cannot see why a co-debtor paying more than his due proportion may not avail himself of the judgment, for his indemnity.

He is not to be deemed, as remarked by Chancellor Kent, in Scribner vs. Hickok, a purchaser for himself of the judgment, and to use it as if it stood in the character of a stranger to the parties, but having satisfied it, as one of the defendants, he is entitled only to indemnity or contribution as a co-defendant from the other defendants.

My opinion, therefore, is, that if after deducting the sum which was credited upon the judgment, there remains as much due as is equal to the amount which Hilleary has a right, upon the principles which have been stated, to claim as contribution from Thomas T. Wheeler, that in that case Hilleary has a right to the use of the judgment for his indemnity, to the full amount of such claim.

[No appeal wastaken from this decree.]